# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 4, 2025 Session

## SARAH ELIZABETH WOODRUFF v. FORD MOTOR COMPANY[1]

**Appeal by Permission from the Court of
Circuit Court for Knox County
No. 2-486-14 William T Ailor, Circuit Court Judge**

_____

**No. E2023-00889-SC-R11-CV**

_____

In this interlocutory appeal, we hold that this Court's holding in *Coffman v. Armstrong International, Inc.*, 615 S.W.3d 888 (Tenn. 2021), does not mandate dismissal as a matter of law of the plaintiff's failure-to-warn claims. Here, the plaintiff filed a product liability lawsuit under the Tennessee Products Liability Act against the defendant alleged manufacturer of a seatbelt extender. The lawsuit claimed that the defendant was required to warn of risks of using the seatbelt extender in combination with a child's booster seat, manufactured by another defendant, but the defendant failed to do so. After a mistrial, the trial court granted permission for interlocutory appeal on the question of whether *Coffman* bars the plaintiff's failure-to-warn claims for risks associated with using the defendant's product with another manufacturer's product. The Court of Appeals granted the interlocutory appeal and held that *Coffman* bars the plaintiff's claims as a matter of law. We reverse the Court of Appeals and clarify that the holding in *Coffman* does not mandate dismissal of the plaintiff's failure-to-warn claims as a matter of law. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Remanded to the Circuit Court for Knox County**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and SARAH K. CAMPBELL, and MARY L. WAGNER, JJ., joined. DWIGHT E. TARWATER, J., not participating.

---

[1] This case was consolidated for purposes of oral argument with a separate related appeal, *Sarah Woodruff ex rel. Ethan Woodruff et al. v. Ford Motor Co. et al.*, No. E2023-00488-SC-R11-CV (hereinafter *Dorel*).

Richard E. Collins and Dan Channing Stanley, Knoxville, Tennessee, for the appellant, Sarah Elizabeth Woodruff.

J. Randolph Bibb, Jr., Robert Francis Chapski, and Ryan Clark, Nashville, Tennessee, and Paul D. Hudson, Grand Rapids, Michigan, for the appellee, Ford Motor Company.

W. Bryan Smith, Memphis, Tennessee and Brian G. Brooks, Greenbrier, Arkansas, for the amici curiae, Tennessee Trial Lawyers Association.

Kyle R. Cummins and Susanna M. Moldoveanu, Memphis, Tennessee, and James M. Beck, Philadelphia, Pennsylvania, for the amici curiae, Product Liability Advisory Council, Inc.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

This case arises from a tragic three-vehicle accident in Knoxville, Tennessee. On August 23, 2013, Plaintiff/Appellant Sarah Woodruff's husband, Benjamin Woodruff, was driving his 2012 Nissan Juke. Their two minor children were in the vehicle with him, both in the back seat. The Woodruffs' younger child, four-year-old Kate, sat behind her father on the driver's side in a forward-facing child seat with a five-point harness. Their older child, six-year-old Ethan, sat on the passenger side in a forward-facing high-backed booster seat.

Mr. Woodruff drove the Juke eastbound on John Sevier Highway and stopped in the center turn lane near the intersection with Austin Park Lane. At the same time, a Chevrolet Blazer driven by a drug-impaired driver was going westbound on the same highway. As Mr. Woodruff prepared to turn left, the driver of the Chevrolet Blazer negligently crossed the centerline and crashed head-on into Mr. Woodruff's Juke. The collision caused the Juke to spin into the path of a 2001 Chrysler minivan, which hit the Juke on the driver's side.

Mr. Woodruff died from injuries he sustained in the accident. Kate suffered some bruises and cuts but was otherwise physically unharmed.

Six-year-old Ethan sustained serious and disabling injuries in the crash, including head trauma and a broken femur. As a result, Ethan required surgery, hospitalization, and significant rehabilitation services.

At some point prior to the accident, Mr. Woodruff and Plaintiff Sarah Woodruff purchased Ethan's booster seat, a Pronto model child restraint device manufactured by

Dorel Juvenile Group ("Dorel").[2]   The booster seat came with an owner's manual.  The owner's manual contained the following:

> Check vehicle instructions for more information about air bag/child restraint use.
>
> ****
>
> If your seat belt is too short, contact your vehicle dealer for a seat belt extender. Do not route the seat belt any way except as shown in the instructions.

Mr. Woodruff purchased the 2012 Nissan Juke involved in the subject accident in February 2013. The owner's manual for the Juke included the following:

> Only NISSAN seatbelt extenders, made by the same company which made the original equipment seatbelts, should be used with NISSAN seatbelts.
>
> Adults and children who can use the standard seatbelt should not use an extender.  Such unnecessary use could result in serious personal injury in the event of an accident.
>
> Never use seatbelt extenders to install child restraints.  If the child restraint is not secured properly, the child could be seriously injured in a collision or sudden stop.

After he purchased the Juke, Mr. Woodruff experienced problems buckling Ethan's booster seat into the seatbelt system in the Juke's backseat.  The receiving end of the seatbelt buckle was recessed in a way that made it difficult for Ethan to buckle himself into his booster seat without Mr. Woodruff's assistance.  To address the issues surrounding the recessed seatbelt buckle, on March 13, 2013, Mr. Woodruff purchased a seatbelt extender on eBay from a retailer called Seatbelt Extender Pros, LLC.[3]

The seatbelt extender Mr. Woodruff purchased was a product of Defendant/Appellee Ford Motor Company ("Ford").  It was intended for use by large adults who do not physically fit in a standard-sized seatbelt restraint system.[4]  Ford commissioned the seatbelt extender to be used in the front seat of certain Ford Focus models.

---

[2] The record is not clear on when the Woodruffs purchased the booster seat.

[3] Seatbelt Extender Pros purchased the extender from an individual vendor named Derek Martin, who purchased it from his employer, an authorized Ford dealership that obtained the seatbelt extender directly from Ford.

[4] It is undisputed that Ethan did not fall within the size range for the extender's intended use.

Ford's component manufacturer, Autoliv Safety Technologies, designed the extender to comply with federal safety standards applicable to seatbelt restraint systems. Ford reviewed and approved the design of the extenders and Autoliv manufactured them using Ford's directions and specifications. Autoliv then sent the extenders to another Ford vendor to be encased in Ford-branded packaging. The packaged extender Mr. Woodruff purchased was distributed directly by Ford to its authorized dealerships, for them to sell or give away to Ford customers.

The specific Ford seatbelt extender Mr. Woodruff bought was manufactured by Autoliv in 2010. It contained a label[5] with the following:

Do not use seat belt extender –
Unless it is physically required to wear the vehicle's safety belt.
If it causes the distance between the front edge of the extender buckle and the center of the occupant's body to be less than 6 inches.
Incorrect use of extender may result in serious injury. Use extender only to the vehicle and seation [sic] position it was provided for.

Mr. Woodruff installed the seatbelt extender in the backseat of the Juke. When the August 13, 2013 accident occurred, Ethan was wearing the Ford seatbelt extender with the Dorel booster seat.

In July 2014, Plaintiff Sarah Woodruff filed a complaint in the Circuit Court for Knox County, on behalf of herself and her minor children. Among other claims, the original complaint brought personal injury claims under the Tennessee Products Liability Act (TPLA) against Ford and Seat Belt Extender Pros for the injuries that Ethan sustained in the accident.[6]

Later, in January 2018, Ms. Woodruff amended her complaint to add other defendants, including Dorel. Eventually, the Plaintiff settled or non-suited all of her claims except for those against Ford and Dorel.

The Plaintiff's product liability claims against both Ford and Dorel were based on alleged failure to warn. Specifically, the Plaintiff claimed Ford and Dorel were required to warn or instruct consumers that a seatbelt extender should never be used in conjunction with a child's booster seat, but they failed to do so. The Plaintiff alleged that their failure

---

[5] Ford also submitted proof that the packaging for the seatbelt extender told users to "not use unless physically required to wear the vehicle's safety belt."

[6] Ms. Woodruff also sued the driver of the Blazer for negligence and wrongful death. After discovery, the trial court granted summary judgment in favor of Ms. Woodruff on her negligence claim against the driver of the Blazer.

to warn of the risks associated with using a seatbelt extender with a booster seat caused Ethan's injuries because the seatbelt extender failed to restrain the booster seat during the collision.

The Plaintiff's product liability claim against Ford focused on the label for the seatbelt extender. During discovery, the undisputed proof indicated that the Ford seatbelt extender was neither designed nor intended to be used with a child's booster seat. It was also generally undisputed that the seatbelt extender was fit for its intended purpose of restraining very large adults. The only defect identified by the Plaintiff's expert witnesses was the lack of adequate warnings on the seatbelt extender label. Citing internal emails obtained from Ford in discovery, the Plaintiff asserted that, for several years before the Woodruffs' accident, Ford knew its seatbelt extenders were being misused with children's booster seats but never updated or corrected the extender's warning label.

Similarly, in its product liability claim against Dorel, the Plaintiff did not assert that the Dorel booster seat was defectively designed or manufactured for its intended purpose. It was generally undisputed that, apart from its use with seatbelt extenders, the booster seat was a sound product. The Plaintiff's claim against Dorel focused on the owner's manual for the booster seat. The Plaintiff's experts criticized the warnings and instructions in the owner's manual for the booster seat, arguing that they indicated to consumers that seatbelt extenders could be used with the booster seat, despite the absence of proper testing or warnings about the risks associated with such use.

In October 2018, Ford and Dorel both moved for summary judgment on the Plaintiff's failure-to-warn claims. Both argued, among other things, that they had no duty to warn of risks associated with another manufacturer's product. Dorel argued specifically that manufacturers have no duty to warn of the dangers of using their products with another manufacturer's product. Ford argued it was neither a manufacturer nor a seller within the meaning of the TPLA, and it should not be held liable for injuries from a seatbelt extender manufactured by Autoliv and sold by a third-party vendor.[7]

In response, the Plaintiff argued both Ford and Dorel failed to provide adequate warnings about a known misuse of their respective products. In a cross-motion for partial summary judgment, as well as her response to Ford's summary judgment motion, the Plaintiff further argued that Ford was a manufacturer or seller under the TPLA because Ford controlled the design and distribution of the seatbelt extender.

---

[7] The question of whether Ford was a manufacturer or seller of the seatbelt extender within the meaning of the Tennessee Products Liability Act is outside the scope of the certified question in this appeal.

In November 2019, the trial court granted Dorel's motion for summary judgment. It found that the Plaintiff had submitted no proof that Dorel's booster seat was defective, and it concluded that Ethan's injuries were caused by the failure of the seatbelt extender. Because Dorel did not manufacture the seatbelt extender, the trial court concluded, Dorel had no duty to warn of the risks of using its booster seat with a seatbelt extender.

As to Ford, the trial court denied Ford's motion for summary judgment and granted the Plaintiff's cross-motion for partial summary judgment. The trial court acknowledged there was a factual dispute about Ford's control over the design of the seatbelt extender, including its warning label. But it nevertheless concluded that Ford's proprietary interest in the schematic for the seatbelt extender and Ford's control over the distribution for the seatbelt extender made Ford a manufacturer, seller, or distributor of the seatbelt extender under the TPLA.

Meanwhile, a separate case, *Coffman v. Armstrong International, Inc.*, had been making its way through the appellate courts. The Court of Appeals issued its decision in *Coffman* in July 2019. *See* No. E2017-01985-COA-R3-CV, 2019 WL 3287067 (Tenn. Ct. App. July 22, 2019).

In November 2019, not long after the Court of Appeals' decision in *Coffman*, the Plaintiff cited *Coffman* in a motion to reconsider the trial court's prior order granting summary judgment in favor of Dorel. The Plaintiff argued in the motion that the earlier grant of summary judgment to Dorel should be reversed because the Court of Appeals in *Coffman* rejected the argument that, as a matter of law, manufacturers have no duty to warn about risks caused by another manufacturer's product.

The trial court felt that the claims of the plaintiff in *Coffman* were distinguishable from the Plaintiff's claims in this case. But it nonetheless believed that the Court of Appeals' ruling in *Coffman* made it necessary to reconsider the earlier grant of summary judgment to Dorel.

In February 2020, the trial court vacated its previous grant of summary judgment in favor of Dorel. In response, in March 2020, Dorel filed a motion requesting the trial court's permission for interlocutory appeal.

In March 2020, Ford filed another motion for summary judgment. Citing the trial court's earlier ruling in favor of Dorel, Ford argued it was also entitled to dismissal as a matter of law. Ford contended it had no duty to warn consumers about risks associated with using the seatbelt extender with another manufacturer's product. In response, the Plaintiff argued that Tennessee had never adopted a brightline rule that manufacturers have no duty to warn of risks associated with other manufacturers' products.

In November 2020, the trial court denied Ford's second motion for summary judgment. The trial court's order did not directly address Ford's argument that it had no duty under the TPLA to warn about another manufacturer's product. Instead, the trial court reiterated its previous ruling that Ford was a "manufacturer" or "seller" of the seatbelt extender under the TPLA.

In January 2021, this Court issued its opinion in *Coffman*, reversing the Court of Appeals and holding that the defendants in that case could not be "held liable for injuries resulting from products they did not make, distribute, or sell." 615 S.W.3d 888, 900 (Tenn. 2021). This led both Ford and Dorel to renew their arguments in the trial court that manufacturers have no duty to warn of risks related to another manufacturer's product.

In their trial court filings, Ford and Dorel argued that *Coffman* foreclosed the Plaintiff's failure-to-warn claims by establishing that, as a matter of law, manufacturers have no duty to warn of risks associated with another manufacturer's product. The Plaintiff argued that her claims were distinguishable from *Coffman* and that *Coffman* did not foreclose claims based on foreseeable misuse.

In March 2023, the trial court reinstated its previous grant of summary judgment to Dorel, concluding that Dorel "had no duty to warn with regard to the seatbelt extender that it did not manufacture or sell." However, the trial court denied summary judgment to Ford. Because Ford distributed and sold the seatbelt extender, the trial court found, *Coffman* did not require it to grant summary judgment in favor of Ford.

The Plaintiff appealed the trial court's reinstatement of summary judgment in favor of Dorel. In the meantime, the Plaintiff's claim against Ford proceeded to a jury trial. But the jury trial against Ford resulted in a mistrial.

After the mistrial, the trial court granted Ford's request for permission to seek an interlocutory appeal of the order denying its motion for relief on summary judgment. In its grant, the trial court certified the following question for interlocutory appeal:

> Whether the Tennessee Supreme Court's decision in *Coffinan v. Armstrong International, Inc.*, 615 S.W.3d 888, 889 (Tenn. 2021), which holds that a manufacturer has no duty to warn with respect to products manufactured and sold by others, requires dismissal as a matter of law of Plaintiff's failure to warn claim against Ford relating to a seatbelt extender used in combination with a child booster seat manufactured and sold by another manufacturer.

And in July 2023, the Court of Appeals granted Ford's request for interlocutory appeal.

In May 2024, the Court of Appeals issued an opinion reversing the trial court's decision to deny summary judgment to Ford.  *Woodruff v. Ford Motor Co.*, No. E2023-00889-COA-R9, 2024 WL 2270675, at *10 (Tenn. Ct. App. May 20, 2024) (hereinafter *Ford*).   The Court of Appeals held that Ford was entitled to judgment as a matter of law based on this Court's opinion in *Coffman*.  *Id.* at *9.

This Court then granted the Plaintiff's application for permission to appeal.[8]

## ANALYSIS

This Court granted the Plaintiff, Ms. Woodruff, permission for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.  Unlike an appeal as of right under Tennessee Rule of Appellate Procedure 3, with a Rule 9 interlocutory appeal, the appellate court's review is "limited to those questions clearly within the scope of the issues certified for interlocutory appeal."  *Metro. Gov't of Nashville & Davidson Cnty. v. Tenn. Dep't of Educ.*, 645 S.W.3d 141, 147 (Tenn. 2022) (citing *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 210 (Tenn. 2019)).

Here, the sole issue certified for our review is:

Whether this Court's decision in *Coffman v. Armstrong International, Inc.*, 615 S.W.3d 888, 889 (Tenn. 2021), which holds that a manufacturer has no duty to warn with respect to products manufactured and sold by others, requires dismissal as a matter of law of Plaintiff's failure to warn claim against Ford relating to a seatbelt extender used in combination with a child booster seat manufactured and sold by another manufacturer.

As background for our consideration of this issue, we briefly review pertinent statutory provisions.  The Tennessee Products Liability Act (TPLA) governs actions for personal injury, death, or property damage caused by defective or dangerous products.  Tenn. Code Ann. § 29-28-102(6) (2012).  Theories of liability based on a "breach of or failure to discharge a duty to warn or instruct" fall within the scope of the TPLA.  *Id.*

Under the TPLA, "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller."  *Id.* § 29-28-105(a).

---

[8] The Plaintiff's request for permission to appeal in *Ford* came before this Court in the same time period as the Plaintiff's request for permission to appeal the Court of Appeals' decision in favor of Dorel. *See Dorel*, No. E2023-00488-COA-R3-CV, 2024 WL 2738197, at *8–9 (Tenn. Ct. App. May 28, 2024), *perm. app. granted*, No. E2023-00488-SC-R11-CV, 2024 WL 4660585 (Tenn. Oct. 24, 2024) (per curiam).

A product is in "defective condition" when its condition "renders it unsafe for normal or anticipatable handling and consumption." *Id.* § 29-28-102(2). An "unreasonably dangerous" product is a product that is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics," or "would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." *Id.* § 29-28-102(8). In addition, "if a product is not unreasonably dangerous at the time it leaves the control of the manufacturer or seller but was made unreasonably dangerous by subsequent unforeseeable alteration, change, improper maintenance or abnormal use, the manufacturer or seller is not liable" under the TPLA. *Id.* § 29-28-108.

In this case, the Plaintiff claims that Ford's seatbelt extender product is unreasonably dangerous when used in combination with a child's booster seat. She asserts that using the seatbelt extender with a booster seat is a foreseeable misuse of Ford's product, and that Ford had a duty to warn consumers against this misuse by including adequate warnings and instructions on the label for the seatbelt extender.

Ford does not dispute that its seatbelt extender should not be used with a booster seat. Rather, Ford argues that the Plaintiffs' claims fail as a matter of law under our holding in *Coffman*. Ford describes *Coffman* as holding that a manufacturer such as Ford has no duty to warn of risks associated with using another manufacturer's product.

Thus, to resolve the certified question, we must examine *Coffman*.

### *Coffman*

In *Coffman*, a retired equipment mechanic alleged that he developed mesothelioma from exposure to asbestos-containing materials in his workplace. 615 S.W.3d at 891. In his work, the plaintiff mechanic repaired and replaced equipment that included pumps, valves, steam traps, gaskets and piping. *Id*. He asserted that the materials needed and used to repair and maintain the equipment contained asbestos. *Id*. at 892. The asbestos-containing materials were neither manufactured nor sold by the equipment manufacturers; the materials were integrated into the equipment after it was sold by the equipment manufacturers. *Id*.

The plaintiff filed a product liability lawsuit against several defendants, including the manufacturers of equipment the plaintiff repaired and maintained in his work. *Id*. at 891–92. The lawsuit claimed the defendant equipment manufacturers were liable under the TPLA for failing to adequately warn users about the risks associated with integrating asbestos-containing materials into the equipment post-sale. *Id*. at 892. Though the asbestos-containing materials were manufactured and sold by other entities without the

involvement of the defendant equipment manufacturers, the plaintiff alleged that the equipment manufacturers nevertheless had a duty to warn because it was foreseeable that the equipment would be repaired and maintained using asbestos-containing materials. *Id.*

The equipment manufacturers moved for summary judgment on the grounds that they had no duty to warn of the risks of asbestos exposure arising from products that they did not make, sell, or distribute. *Id.* The trial court granted summary judgment in favor of the defendants on the failure-to-warn claims, and the Court of Appeals reversed. *Id.* at 892–93. This Court granted permission to appeal on the question of whether the equipment manufacturers "had a duty to warn of the dangers associated with the post-sale integration of asbestos-containing materials manufactured and sold by others." *Id.* at 894.

The Court in *Coffman* answered the question on appeal by interpreting the language of the TPLA. *Id.* at 895. It noted first that the TPLA specifically states that manufacturers and sellers are not liable for injury caused by a product unless it is "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." *Id.* (quoting Tenn. Code Ann. § 29-28-105(a)). Based on its interpretation of this provision, the Court held that the TPLA "places a duty to warn on a manufacturer or seller to warn about the condition of the product only if it was defective or unreasonably dangerous at the time the manufacturer transfers control of the product." *Id.* at 896.

Second, *Coffman* pointed out that the definitions of "unreasonably dangerous" and "defective condition" in the TPLA "link a defendant's liability to the defendant's own product." *Id.* at 896–97 (citing Tenn. Code Ann. § 29-28-102(2), -102(8)). Observing that the TPLA definition of "defective condition" says that "the product's condition 'renders *it* unsafe for normal or anticipatable handling and consumption,'" *Coffman* noted, "[t]he '*it*' refers to the manufacturer's own product." *Id.* at 897 (quoting Tenn. Code Ann. § 29-28-102(2)). In *Coffman*, the plaintiff mechanic's injuries were allegedly caused by "exposure to asbestos." *Id.* at 891. But "none of the [equipment manufacturers'] products at issue contained asbestos when they were under the [equipment manufacturers'] control." *Id.* at 895. The asbestos-containing materials were manufactured and sold by other entities without the involvement of the defendant equipment manufacturers, and they were added after the equipment manufacturers transferred control of the equipment. *Id.* at 891–92, 897.

Under those circumstances, the Court held, the equipment manufacturers had no duty to warn of the dangers of asbestos. The Court rejected the plaintiff's argument that the "TPLA anticipates that manufacturers are liable for the foreseeable alterations, changes, improper maintenance, or abnormal use of their products" and found it "dispositive that the end-products at issue on this appeal were *neither made nor sold by the Equipment Defendants*." *Id.* at 897. *Coffman* emphasized that this holding was "based on the language of the TPLA." *Id.* at 899. *Coffman* also cautioned that its holding was limited: "Again, this

appeal deals strictly with the [equipment manufacturers] in situations where there was post-sale integration of asbestos-containing parts manufactured and sold by others." *Id*. at 897.

### Whether *Coffman* Mandates Dismissal

Here, the Court of Appeals found that the holding in *Coffman* mandated dismissal of the Plaintiff's failure-to-warn claims against Ford:

> We find that *Coffman*'s explicit holding that "under the TPLA, manufacturers have no duty to warn with respect to products manufactured and sold by others" applies to the facts of this action and to Plaintiff's theory of Ford's liability. . . . We do not read *Coffman*'s holdings to be limited to cases about the post-sale integration of asbestos-laden component parts. . . . Ford did not owe Plaintiff a legal duty to warn under the circumstances of this case.
>
> ****
>
> The plaintiffs in *Coffman* presented evidence at summary judgment that the Equipment Defendants not only anticipated that asbestos-containing products would be added to their products after the sale, but that they actually intended and specified that asbestos material be added to make those products useable. . . . Still, when considering the plaintiffs' contentions "that manufacturers are liable for the foreseeable alterations, changes, improper maintenance, or abnormal use of their products," the Court's majority ruled that the Equipment Defendants could not be liable on a failure to warn theory. . . . Here, Ford's seat belt extender was useable on its own for its intended purpose, and it was never intended to be combined with another product like Dorel's booster seat or Nissan's Juke rear seat belt system.
>
> Based on *Coffman*'s guidance and the relevant TPLA provisions, we conclude that Ford did not have the legal duty in this case to warn about the misuse that arose from the combination of its product with the products of other manufacturers.

*Ford*, 2024 WL 2270675, at *9. Thus, the Court of Appeals interpreted *Coffman* broadly, as barring any failure-to-warn claim where the manufacturer's original product is used in conjunction with another manufacturer's product. In this appeal, Ford likewise views *Coffman* broadly, as controlling the disposition of the Plaintiff's claims, and it urges us to affirm the holding of the Court of Appeals.

We agree that there are facial similarities between *Coffman* and the instant case, in that both involve failure-to-warn claims in the context of a purchaser's use of the defendant's product with another product. But there are significant differences as well.

Importantly, *Coffman* involved the end-consumer's post-sale integration of another manufacturer's asbestos-containing product into the equipment manufacturers' non-dangerous product, to create a new "end-product." *Coffman*, 615 S.W.3d at 894. In contrast, here, the end-consumer used two sound end-products together.

*Coffman* reflects a particular factual subset of cases involving the combination of two products. There are numerous other subsets:

> Some common contexts in which [combined product] cases arise include: (1) when completed products are used in conjunction with one another; (2) when a third-party manufacturer outfits an incomplete product with component parts post-sale; (3) when new parts replace old ones; and (4) when a manufacturer creates a "bare-metal" product, which is one without necessary insulation or packing that is added on at a later time, either by the bare-metal manufacturer itself or a third-party such as another manufacturer or buyer.

David Judd, *Disentangling* DeVries: *A Manufacturer's Duty to Warn Against the Dangers of Third-Party Products*, 81 La. L. Rev. 217, 229 (2020).

Different factual circumstances may be governed by different principles on duty and liability.[9] For example, this Court has recognized some circumstances in which the TPLA may impose liability on the manufacturer of a component part for a defective final product. *Davis v. Komatsu Am. Indus. Corp.*, 42 S.W.3d 34, 42–43 (Tenn. 2001) (citing Tenn. Code Ann. §§ 29-28-102(4), -106(b), and -108; *Restatement (Third) of Torts: Products Liability* § 5(a)–(b) (Am. L. Inst. 1998)). This contrasts with *Coffman*'s holding under the TPLA in a different factual context. *See Coffman*, 615 S.W.3d at 895–97 ("[T]he TPLA does not create a duty or liability for defendants for the post-sale incorporation of products containing asbestos . . . incorporated into that equipment after it left their control.").

While this Court has not previously considered the type of claim at issue here, other jurisdictions have. Several treat claims like those in *Coffman*—where the end-consumer integrates an inherently dangerous or defective product into a sound product—differently from claims like those here—where two independently sound products, used by the end-consumer together, create a risk of harm. *Compare, e.g., O'Neil v. Crane Co.*, 266 P.3d 987, 1004–05 (Cal. 2012) (holding that equipment manufacturers had no duty to warn of risks associated with post-sale integration of asbestos into their products), *with Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.*, 28 Cal. Rptr. 3d 744, 750–51 (Cal. Ct. App. 2004) (finding that the combination of two sound products caused a dangerous

---

[9] *See* Richard E. Kaye, *Am. L. Prod. Liab.* 3d § 32:9 (2024) (describing the differing principles applicable to cases involving (1) component parts, (2) replacement parts, (3) a sound product which is compatible with a defective product, (4) two sound products which together create a dangerous condition, and (5) a product which increases the risks posed by another manufacturer's product).

condition).  *See also Rastelli v. Goodyear Tire & Rubber Co.*, 591 N.E.2d 222, 225–26 (N.Y. 1992) ("This is not a case where the combination of one sound product with another sound product creates a dangerous condition about which the manufacturer of each product has a duty to warn. . . . we conclude that Goodyear had no duty to warn about the use of its tire with potentially dangerous multipiece rims produced by another . . . .") (citing *Ilosky v. Michelin Tire Corp.*, 307 S.E.2d 603 (W. Va. 1983))); *Macias v. Saberhagen Holdings*, 282 P.3d 1069, 1075–76, 1080 (Wash. 2012) (discussing the "generally recognized exception[]" to the no-liability rule where "two sound products combine to create an unreasonably unsafe condition"); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498 n.7 (Wash. 2008) (*en banc*) (noting that "there are some cases where the combination of two sound products creates a dangerous condition, and both manufacturers have a duty to warn" (citations omitted)).[10]

Against this backdrop, we note that *Coffman* itself cautioned that its holding was limited, addressing only "[w]hether there is a duty to warn of the dangers associated with the post-sale integration of asbestos-containing parts that are manufactured and sold by others." *Coffman*, 615 S.W.3d at 894.  Later, *Coffman* cautioned "[a]gain" that it dealt "strictly" with "situations where there was post-sale integration of asbestos-containing parts manufactured and sold by others."[11] *Id.* at 894, 897.

Factual differences between *Coffman* and the instant case could be material to the defendant's duty to warn.  In *Coffman*, the plaintiffs' injuries were allegedly caused by asbestos. But the defendants' products did not contain asbestos when they left the defendants' control; the asbestos was in materials that the end-consumer integrated into the defendants' products post-sale, after the defendants' products left their control.  *Id.* at 895. *Coffman* noted that the text of the TPLA tied a defendant-manufacturer's liability to its control over its own product, emphasizing that the term "it" in the statutory definition of "defective condition" referred to the defendant's product, not the defendant's product "plus some later-included asbestos-containing material." *Id.* at 897 (citing Tenn. Code Ann. § 29-

---

[10] One treatise recognizes, "although a manufacturer generally has no duty to warn about another manufacturer's product when the first manufacturer produces a sound product that is compatible for use with a defective product of the other manufacturer, it has been noted that there may be cases in which the combination of one sound product with another sound product creates a dangerous condition about which the manufacturer of each product has a duty to warn." Kaye, *supra* note 12, at § 32:9. *See also* Judd, *supra*, at 228–38 (distinguishing cases involving the integration of an inherently dangerous product from cases involving sound products that create a risk when used together).

[11] "The *Coffman* Court's narrow opinion only addresses the Appellee's claims regarding the asbestos integrated post-sale by another party, and rejected public policy considerations and the foreseeability analysis that previously typified deliberations for assigning duty in Tennessee." Penelope M. Brooks, *Strict Products Liability—Coffman v. Armstrong International, Inc.: Are the People Powerless Against Prominent Products?*, 53 U. Mem. L. Rev. 807, 818 (2023).

28-102(2)).  In *Coffman*, it was "dispositive" that the allegedly dangerous "end-products" were "*neither made nor sold by*" the defendant equipment manufacturers.  *Id*.

But here, neither product is inherently dangerous on its own.  It is generally undisputed that both the Ford seat belt extender and the Dorel booster seat are sound products when used independently for their intended purposes.  The Plaintiff here alleges that the end-consumer's use of two sound and distinct products together creates a dangerous condition—a risk of harm that neither product poses on its own. Under the Plaintiff's theory of the case, both the seat belt extender and the booster seat contributed to Ethan's injuries.  Both defendants allegedly failed to warn of the foreseeable dangers of their combined use.

Unlike in *Coffman*, the Plaintiff here alleges that the injuries resulted from foreseeable misuse of Ford's *own product*, the seatbelt extender.[12] The Plaintiff's theory of liability is that the label for the seatbelt extender did not adequately warn of a misuse that was foreseeable to Ford *when the extender left Ford's control*.   And Ford points to no language in the TPLA that relieves Ford of a duty to warn simply because the foreseeable misuse of its product involves another manufacturer's product as well.

Here, the Court of Appeals interpreted *Coffman* as broadly barring any failure-to-warn claim where the defendant's original product is used with another manufacturer's product.  Respectfully, *Coffman* did not adopt such a rule.  *Coffman* only held that the manufacturers of non-defective equipment were not liable for failing to warn of dangers caused by an end-consumer's post-sale integration of another manufacturer's inherently dangerous asbestos products.  615 S.W.3d at 899.  The limited holding in *Coffman* does not foreclose the possibility that manufacturers of independently sound products have a duty to warn of a foreseeable misuse of their own product that renders the product unreasonably dangerous.

Thus, the Plaintiff's claims in this case differ significantly from those in *Coffman*, and those differences *may* be material to the duty analysis.  For example, a duty to warn *might* exist if it was foreseeable when the product left Ford's control that Ford's product

---

[12] Based on combined-use cases from other jurisdictions, Ms. Woodruff asserts that Ford's duty to warn should be analyzed under a foreseeable harm framework that encompasses both intentional use and foreseeable misuse of two sound products.  *See, e.g.*, *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991) (applying Tennessee law) (foreseeable misuse); *Kirsten v. W.M. Barr & Co.*, No. 97 C 0002, 1997 WL 136328, at *2–3 (N.D. Ill. Mar. 19, 1997) (applying Illinois law) (intended use); *Martin v. Interstate Battery Sys. of Am., Inc.*, No. 12-CV-184-JED-FHM, 2016 WL 4275740, at *16–17 (N.D. Okla. Aug. 12, 2016) (applying Oklahoma law) (foreseeable misuse); *Tellez-Cordova*, 28 Cal. Rptr. 3d at 748–49 (intended use with another manufacturer's product); *Barbosa v. Hopper Feeds, Inc.*, 537 N.E.2d 99, 102–03 (Mass. 1989) (intended use); *Ilosky*, 307 S.E.2d at 609–10 (foreseeable misuse).

would be used in combination with another product in a way that rendered Ford's product unsafe or unreasonably dangerous. *See* Tenn. Code Ann. § 29-28-102(2) (defining "[d]efective condition" to mean "a condition of a product that renders it unsafe *for normal or anticipatable handling* or consumption" (emphasis added)); *id.* § 29-28-105(a) ("A manufacturer or seller of a product shall not be liable . . . unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller."); *id.* § 29-28-108 ("If a product is not unreasonably dangerous at the time it leaves the control of the manufacturer or seller but was made unreasonably dangerous by subsequent *unforeseeable* alteration, change, improper maintenance or abnormal use, the manufacturer or seller is not liable" (emphasis added)).

To be clear, we are *not* holding that Ford had a duty to warn consumers not to use its seatbelt extender with Dorel's booster seat. That issue is beyond the scope of the question certified to us for appeal. Here, we are asked only to clarify whether *Coffman* "requires dismissal as a matter of law of Plaintiff's failure to warn claim against Ford relating to a seatbelt extender used in combination with a child booster seat manufactured and sold by another manufacturer." We hold it does not.

The parties' appellate briefs include arguments on other issues, such as the condition of the seatbelt extender, the adequacy of the warnings, the mechanics of Ethan's injuries, and Ford's alleged knowledge of misuse of the seatbelt extender. These issues are also beyond the scope of the certified question, so we respectfully decline to address them.

Our holding on the certified question does not, of course, determine the ultimate outcome of this case. The question was certified by the trial court for interlocutory appeal after a mistrial, so we remand the case to the trial court for further proceedings consistent with this Opinion.

## CONCLUSION

We hold that this Court's holding in *Coffman v. Armstrong International, Inc.*, 615 S.W.3d 888 (Tenn. 2021), does not mandate dismissal as a matter of law of the Plaintiff's failure-to-warn claim against Defendant Ford. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this Opinion.

s/HOLLY KIRBY, JUSTICE
HOLLY KIRBY, JUSTICE